IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| IN RE: KUGEL MESH HERNIA | ) | |
| PATCH LITIGATION | ) | MDL No. 1842 |
| | ) | R.I. Docket No. CA 07-1843 |
| | ) | (Hall v. Davol, Inc.) |

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

The Plaintiffs in the above shown proceeding, by and through their counsel, hereby oppose the motion to dismiss, or alternatively, for particularity, of Defendants Davol, Inc. and C.R. Bard, Inc. The motion is Doc. No. 6 of Hall v. Davol, No. 3:07 CV 0480-TMP, now styled CA 07-1843 (MDL 1842).

**Introduction and Summary**

The Defendants move against only the Plaintiffs' claims of fraud and for breach of warranty. The allegations of the Complaint establish the plausible entitlement to relief on those two claims which is required by the federal law which controls disposition of the motion. The substantive law of Alabama which gives rise to the entitlement to relief defeats the Defendants' discrete arguments for dismissal.

**Rules of Decision**

The Defendants move under Fed.R.Civ.P. 12(b)(6) and 9(b). The precedent which controls the motion is clear. "In considering a Rule 12(b)(6) motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." Barkan v. Dunkin' Donuts, Inc., __ F.Supp.2d ___,

2007 WL 3156288 at *1 (October 30, 2007, D.R.I.); accord Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007) (In reviewing decision on motion to dismiss, court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."). The test is whether the plaintiff alleges "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1967 (2007)); accord Financial Sec. Assur., Inc., ante (same).

In general, for particularity, which is the ground of the Defendants' Rule 9(b) argument (the alternative argument), the question is whether the allegations of fraud sufficiently notify the Defendants of the time and other particular facts of the claim. See New England Data Services, Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987) (First of three purposes of Rule 9(b) requirement is "to place the defendants on notice and enable them to prepare meaningful responses."). If not, additional details of the time and place of the allegedly fraudulent conduct, whether acts of commission or omission, should be allowed to be added to the pleading by amendment under the liberal allowance contemplated by Rule 9(b). See e.g., 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure Civ. 3d Ed. § 1300 (2004).

## Argument

The Halls plead allegations sufficient to proceed on their claims of fraud and for breach of warranty. They allege the risks and defects of the mesh patch that hurt Ms. Hall. Complaint, Doc. No. 1, at pp. 2-6, 8-10, ¶¶ 9-14, 16, 19-20, 32-37, 45(g)-(i), 47, 51-54. They contend that, at the time the patch was implanted in Ms. Hall, the Defendants knew of the risks and defects. Id. The Defendants knew of those risks and did not warn of them. Id. The Defendants knowingly misrepresented the safety characteristics of the device, id. at p. 12, ¶¶ 62-65, and in so doing, breached duties to communicate full and honest information about the device. Id. at pp. 9-12, ¶¶ 49-56, 62-65. The misrepresentations, whether by omission or commission, were made to the physicians upon whom patients are entitled to rely. Id. The device, as a result of these problems, was unfit for use and was not merchantable. Id. at pp. 11, ¶¶ 57-61. Ms. Hall's suffering and her husband's consequent loss of consortium constitute the physical toll the Plaintiffs paid for the misconduct. Id. at pp. 2-4, 7, 9-12, ¶¶ 7-16, 39, 48, 56, 61, 65.

### 1. THE DEFENDANTS WRONGLY CONTEND THAT PRIVITY IS A PREREQUISITE OF RELIEF FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY.

The Plaintiffs' warranty claim, which is Count IV of the Complaint, rests primarily on Ala. Code Section 7-2-318, which states:

> A sellers' warranty, whether express or implied, extends to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Id. (entitled, "Third-party beneficiaries of warranties express or implied") (Acts 1965, No. 549, p. 811). The plain meaning of that code section controls here, as follows:

> The purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to "privity."

Id. (Official Comment).

The beacon clarity of Section 7-2-318 is stated in the Alabama Pattern Jury Instructions ("APJI"). The APJI give Alabama jurists and practitioners this explanation of the instruction on a claim for personal injury for breach of the implied warranty of merchantability:

> No privity of contract between the parties is required and causes of action may therefore be against all sellers of such goods, including the manufacturer, distributor, wholesaler, retailer, or any or all of them in favor of any injured person if it was reasonable to expect that such person would use, consume or be affected by the breach of warranty.

2 Ala. Pattern Jury Instr. Civ. 32.02 (2nd ed.) ("Notes on Use") (emphasis added).

The Halls overwhelmingly plead for relief based on personal injuries suffered because the Defendants breached the warranty. Doc. No. 1, Complaint, at p. 11, ¶¶ 57-61 (and adding allegations adopted by reference). Thus, the Halls' claims fall

squarely and safely within the above authorities, allowing them to proceed in the absence of privity. Section 7-2-318, quoted in full above, clearly makes the Halls beneficiaries of the implied warranty that the mesh patch at issue was fit for use and merchantable. Just as clearly, according to the allegations, the Plaintiffs were adversely "affected" by the breach of that warranty, placing their claim inside the four corners of Section 7-2-318. The protection of that section "extends to any natural person if it is reasonable to expect that such person may . . . be affected by the goods and who is injured in person by breach of the warranty." Id.[1] Conspicuously, the Defendants overlook Section 7-2-318, even as they refer to other warranty provisions of the Alabama Code. Doc. No. 6, Memorandum, at p. 3 (referring to Secs. 7-2-313, -314, but not 7-2-318).

**A. Privity Is Not Required, and the Defendants' Authority Is Incorrect.**

To defeat the warranty claim, the Defendants argue that the Halls do not allege that they bought the device from the Defendants and thus were not in privity with them. "Plaintiffs make no allegation that they purchased the Composix Kugel Patch directly from the Defendants." Doc. No. 6, Memorandum, at p. 3 (symbols omitted). They re-phrase the argument in part by contending that they did not

---

1/ The Defendants elected against moving to dismiss Mr. Hall's claim of loss of consortium, which is a personal injury based in pertinent part on the adverse effect on him of the harm caused by the device.

"sell" the device to the Plaintiffs. Id., Motion, at p. 1 (warranty claim "may only be brought against sellers of products, not manufacturers"). They do not deny that they made, marketed, and sold the device, only that (as said) the Halls do not allege that they (the Halls) bought it directly from the Defendants. Doc. No. 5, Answer, at p. 6, ¶ 18 ("Davol, Inc. admits that it designed, manufactured, sold, and distributed the Composix Kugel Hernia Patch for use by prescribing physicians . . ." (emphasis added) (symbols omitted)).

In all events, regardless of phrasing, the Defendants rest their discrete argument against the warranty claim on a single decision, Rose v. General Motors Corp., 323 F.Supp.2d 1244, 1248 (N.D. Ala. 2004). They say (parenthetically) that Rose holds that "Alabama law, as applied by the Supreme Court of Alabama, would preclude warranty actions by remote consumers against manufacturers, even in cases of personal injury." Doc. No. 6, Memorandum, at p. 3.

Unsurprisingly, in view of the powerful, full-bodied authorities the Plaintiffs invoke, Alabama courts view the authority the Rose court cites for its holding differently than the Rose court. Those courts view that authority, which is Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), merely as standing for the unremarkable proposition – unremarkable here because the proposition does not bear on the physical suffering the Halls allege – that privity is required when only

economic loss is claimed for a breach of the warranty. The Ex parte General Motors Corp. decision, viewed correctly as it is by Alabama state courts (as follows), stands only for a rule that privity is required when a plaintiff is "seeking to recover for only economic injury:"

> Under the UCC as adopted in Alabama, a consumer seeking to recover for only economic injury and property damage has a valid implied-warranty claim against only his or her immediate seller with whom the consumer is in privity. Rhodes v. General Motors Corp., 621 So.2d 945, 947 (Ala.1993); Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999).
>
> * * * *
>
> We note that Russell does not claim to have suffered bodily injury as a result of a claimed breach of warranty. Under § 7-2-318, Ala. Code 1975, a seller's warranty extends to any natural person who is "injured in person" when it is reasonable to expect that person to use or be affected by goods under warranty.

CertainTeed Corp. v. Russell, 883 So.2d 1266, 1270 & n.4 (Ala.Civ.App. 2003) (emphasis added). The Rose court, in contrast says that

> Ex Parte General Motors is a recent emphatic statement by the highest court in Alabama that the law in Alabama precludes actions by remote consumers against automobile manufacturers for breach of the implied warranty of merchantability, even in cases of personal injury.

323 F.Supp.2d at 1248.

The Rose court plainly is wrong. Ala. Code Section 7-2-318 could not be plainer in providing for relief against product makers on a breach-of-warranty claim

by persons – exactly like the Plaintiffs – hurt by the allegedly harmful product. All courts in Alabama except the Rose court correctly understand that plain meaning of the code section. "The rule in Alabama clearly requires privity in enforcing warranties in a sale where only economic loss is suffered." Dudley v. Bayou Fabricators, Inc., 330 F.Supp. 788, 791 (S.D. Ala. 1971) (emphasis added). And:

> The seller's warranty is extended in section 7-2-318 to any natural person who is reasonably expected to use, consume, or be affected by the goods and who is injured in person by the breach. Accordingly, the legislature has eliminated the requirement of privity when the breach causes personal injury and has extended the right to recover for such injuries to the third party beneficiaries of the warranty, [i]. e., the warranty beneficiaries.

Simmons v. Clemco Industries, 368 So.2d 509, 513 (Ala. 1979) (emphasis added) (discussion accompanying answer to question certified to Ala. Sup. Ct. by federal court in Alabama). So, contrary to the errant conjecture of the Rose court, the Alabama Supreme Court plainly declares in Simmons that privity is not required for the claim of personal injury brought by the Halls.[2] Therefore, whether the

---

2/ The Rose court overlooked Simmons, a mistake. It also overlooked an Eleventh Circuit opinion issued a mere two months before Rose, in which the representative of a deceased consumer was allowed to proceed on his breach-of-implied-warranty claim against a manufacturer for the death of the consumer allegedly caused by that manufacturer's tobacco product. That opinion is Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183 (11th Cir. 2004). It is clear that the warranty claim in Spain was brought against the manufacturer as the manufacturer, not as an entity that sold the product directly to the decedent. Id. at 1186-87. The Spain holding to allow the warranty claim to go forward, id. at 1190, is a nullity if the Defendants are correct that Alabama law requires privity for warranty claims involving personal injury. That would be very surprising news to

Defendants "sold" directly to the Plaintiffs is not the question. The sole question is whether the implied warranty originating with the Defendants (who made and sold the device, as Davol admits) and extending through to the Halls was breached, causing any personal injury. Section 7-2-318 is the legal basis of that question, which is its purpose:

> The purpose of this section is to give certain beneficiaries the benefit of the same warranty which the buyer received in the contract of sale, thereby freeing any such beneficiaries from any technical rules as to "privity."

Ala. Code Section 7-2-318 (Official Comment). The allegations of the Complaint establish a plausible right to relief on this question of breach. That is all that is required of the Plaintiffs at this stage.

The foregoing points honor the express language of Section 7-2-318. They give effect to that language, exactly as declared in Simmons, ante, and by every other court that has squarely addressed the language. "Section [7-]2-318 does away with the requirements of privity in cases involving personal injury." Dudley, 330 F.Supp. at 791 n.7.

**B. Substantive Alabama Law Controls the Claim.**

Jurisdiction for this case arises in diversity, so substantive Alabama law controls the warranty claim. Specifically, Erie doctrine secures the protection and

---

the Eleventh Circuit.

benefit of Ala. Code Section 7-2-318 for the Halls. That conclusion is beyond dispute:

> [W]here a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 428, 116 S.Ct. 2211, 2220 (1996) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470 (1945)). It follows from the Alabama authorities the Halls invoke, and from Erie doctrine (expressed in the quotation above), that the motion to dismiss must be denied. The privity requirement it presumes to rest on – or the direct-sale requirement in the Defendants' phrasing – does not operate against the Halls, the ruling in Rose notwithstanding. That same conclusion that the motion is due to be denied applies as well to the discrete argument against the Plaintiffs' claim of fraud.

**2. THE DEFENDANTS ERR BY ARGUING THAT ALABAMA DOES NOT ALLOW RELIEF FOR FRAUD FOR MISREPRESENTATIONS OR OMISSIONS INVOLVING A THIRD PARTY – IN THIS CASE THE PHYSICIANS THE DEFENDANTS FAILED TO INFORM ABOUT THE RISKS OF THE MESH PATCH.**

The Defendants move against the claim of fraud, which is Count V of the Complaint, on the basis of their contention that the Halls do not allege, and indeed never could show, that they were misinformed directly by the Defendants or that the Defendants breached any duty. Doc. No. 6, Memorandum, at p. 4 ("Plaintiffs'

fraudulent concealment claims fail because Defendants, as mere product manufacturers with no direct contact, communication, or relationship with Plaintiffs . . ."). The argument overlooks the dispositive principles of Alabama law, set forth below, that (1) allow patients such as Ms. Hall to rely upon their physicians, (2) create a right to relief for the Halls for a misrepresentation or omission to the treating doctors which resulted in the physical injuries alleged, and (3) impose a duty of honesty and disclosure on the Defendants to fully inform doctors about the device.

The physicians were misled, according to the Complaint, by the Defendants. Doc. No. 1, Compliant, at pp. 6, 12, ¶¶ 34-35, 63-64. The Defendants' discrete argument against Count V overlooks both those allegations and the general Alabama precedent which allows the Halls to recover damages for fraud perpetrated in that manner, i.e., via a third party.

> Generally, a stranger to a transaction has no cause of action for misrepresentation. Thomas v. Halstead, 605 So.2d 1181, 1184 (Ala.1992). However, this rule is not without exception: " 'If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.' [37 C.J.S. Fraud § 60, p. 344 (1943) ] . .. . "In Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured."

Ex parte DaimlerChrysler Corp., 952 So.2d 1082, 1090 (Ala. 2006).

To be sure, in Alabama, an undisclosed fact or a fact suppressed can give rise

to a claim of fraudulent misrepresentation. Brown v. K & V Automotive, 946 So.2d 458, 464 (Ala. Civ. App. 2006) ("A fraud claim may involve an alleged affirmative misrepresentation of a material fact or an alleged concealment of a material fact for which there is a duty to disclose.").

Brown, ante, gives effect to the entire communication made by a party sued for fraud. Under it, what a defendant sued for fraud did not communicate is weighed with and as important as what the defendant communicated. That same reasoning applies with greater force to claims against a maker of a medical device. Any omission to reveal a risk or defect of the device could kill. Both that reality and the importance that Alabama law assigns to honest and accurate communication to doctors by manufacturers are clearly expressed in settled law. E.g., Walls v. Alpharma USPD, Inc., 887 So.2d 881 (Ala. 2004). That law proves and underscores as a matter of law the proper reliance of the patient (Ms. Hall) upon her physician, who is the learned intermediary between the patient and the maker and seller of the device, i.e., these Defendants. See id. Consequences follow from any failure to provide honest and accurate information to a doctor about a device's risks to patients. "[W]hen the warning to the intermediary [the doctor] is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user." Porterfield v. Ethicon, Inc., 183 F.3d 464, 468 (5th Cir. 1999).

Holdings both of Alabama courts and federal courts applying state law establish that a concealment from physicians of critical information about a medical device or prescription drug properly grounds a tort claim by a patient injured by the drug. Walls, 887 So.2d at 883-86; McNeil v. Wyeth, 462 F.3d 364 (5th Cir. 2006). In those cases, the physician is the person directly deceived about the device or drug, and the patient properly relies on the doctor as the learned intermediary. Those conclusions are established by overwhelming authority:

> "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." . . . [A] plaintiff may properly state a fraud claim even though the defendant makes a false representation to a third party rather than to the plaintiff.

Delta Health Group, Inc. v. Stafford, 887 So.2d 887, 898-99 (Ala. 2004) (citation omitted); accord Walls, ante (quoting precedent on the learned intermediary doctrine); McNeil, 462 F.3d at 373 (applying the learned intermediary doctrine in suit by patient against manufacturer of drug).

The fraud claim provides a plausible right to relief in view of the above authorities. The Halls properly plead the claim within the scope of the above authorities. They are entitled to the benefit and protection of the reliance Alabama law assigns to both the doctor-patient relationship and the information these Defendants communicated, or failed to communicate, to the physicians. Indeed, the

Defendants themselves seek to exploit that reliance. They plead the learned intermediary doctrine as an affirmative defense. Doc. No. 5, Answer, at p. 14, ¶ 11. Their Answer also shows that they are fully notified of, and are preparing for, a contest of evidence over what they communicated to the treating doctors, or what they failed to communicate (the Plaintiffs' version). Id. at pp. 2-3, 6-7, 11, 14-15, ¶¶ 6-7, 18, 23, 52, (affirmative defenses) 11-12. The instant argument against the fraud claim is a transparent and meritless bid to evade the allegations that the doctors were misinformed and misled about this device which harmed the Plaintiffs.

**3. PARTICULARITY IS NOT LACKING; HOWEVER, SHOULD ADDITIONAL ALLEGATIONS BE IN ORDER, LEAVE SHOULD BE GRANTED TO ADD THEM AFTER THE FILING OF THE MASTER COMPLAINT.**

The Plaintiffs properly allege the date of the surgery during which the hernia patch was implanted, and they contend that the Defendants knew by that date of risks of injury that they did not disclose. Complaint, Doc. No. 1, at pp. 2-6, 8-10, ¶¶ 9-14, 16, 19-20, 32-37, 45(g)-(i), 47, 51-54. They contend that the Defendants failed to inform physicians of those risks, and that the risks materialized and injured Ms. Hall. Id. Those allegations constitute notice of the time and place of the Defendants' conscious failure to communicate, inform, and warn. They pass muster under Rule 9(b). The Defendants cannot credibly maintain that they are unaware of particulars of the claim. They are preparing, as shown above, to try to prove that they did not

misinform physicians about the device. In other words, they are not hindered or prejudiced in any way by the alleged absence of sufficient particulars.

However, should the Court find that additional details are in order, it should grant the Plaintiffs leave to amend under the liberal allowance Rule 9(b) contemplates, as follows:

> [A]n insufficient allegation of fraud or mistake under Rule 9(b) is subject to the liberal amendment provisions of Federal Rule 15, and, as the voluminous citations in the note below indicates, numerous cases have applied the two rules together. The result is that in most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, whether or not coupled with a motion to dismiss, it will be with leave to amend the deficient pleading. Thus, a failure to satisfy Rule 9(b) will not automatically lead to a dismissal of the action, let alone one that leads to a judgment on the merits.
>
> Leave to replead will be denied, however, when the district court believes that it would be futile or when leave to replead has been granted previously but has not produced a satisfactory pleading.

5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure Civ. 3d Ed. § 1300 (2004) ("Consequences of Failing to Plead Fraud or Mistake With Particularity") (footnotes omitted).

The liberal allowance of leave to amend stated above is appropriate here. Previous leave has not been granted (the instant exception to the allowance), and there is no showing of futility (same). The allowance is especially apt here, because the claims of the Halls now are part of a wider proceeding ordered specifically for

purposes of discovery, and in which an order allowing a master complaint to be filed has been entered. Therefore, if their pleading presently is inadequate in any way, the Halls should be allowed to (1) benefit from the discovery and the co-ordination of information among plaintiffs that the orders in this MDL are designed to achieve, and (2) retain their pleading completely intact for later strengthening based upon  the master re-pleading ordered by the Court.

It follows that the Halls should not suffer any of their claims to be stripped out piecemeal prior to obtaining the benefits of the MDL. Evidence to support their fraud allegations, which would allow the Halls to strengthen those allegations, is precisely a benefit contemplated. That evidence may result from discovery in the MDL and/or by coordination with the other plaintiffs.

**Conclusion**

The motion to dismiss is due to be denied for the foregoing reasons. If particularly is lacking, leave should be granted to amend the pleading after the filing of the master complaint.

Respectfully submitted this 21st day of November, 2007.

/s/W. Lewis Garrison, Jr.
W. Lewis Garrison, Jr.
Ala. State Bar No. ASB-3591-N74W
HENINGER GARRISON DAVIS, LLC

2224 First Avenue North
Birmingham AL 35203
Ph. 205/326-3336
Facsimile 205/326-3332

*Counsel for Plaintiffs Lilyan Kathleen Hall and Alonzo Hall*
Hall v. Davol, Inc., Case No. 3:07 CV 0480-TMP
(In re: Kugel Mesh Hernia Patch Litigation, MDL No. 1842)

Of Counsel:

Timothy C. Davis
William L. Bross
HENINGER GARRISON DAVIS, LLC
2224 First Avenue North
Birmingham AL 35203

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2007, that a true copy of the foregoing **Plaintiffs' Opposition to Motion to Dismiss** has been filed electronically and that it is available for viewing and downloading from the ECF system. I also certify that a true copy of this document was also mailed or electronically mailed to all counsel of record.

/s/ Donald A. Migliori
Donald A. Migliori
RI Bar#4937
Motley Rice LLC
321 South Main Street
P.O. Box 6067
Providence, RI 02940
Telephone: 401-457-7700
Fax: 401-457-7708